United States District Court
Southern District of Texas
**ENTERED**
July 28, 2020
David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DEBANY RIVERA, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-20-1881 |
| | § | |
| CITY OF PASADENA, TEXAS, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Encounters with police officers that injure or kill have been reported with sad frequency in cities and communities across the country. These encounters often lead to litigation. This is one of those cases.

Juan Javier Martinez, Jr., died from severe injuries after a violent encounter with Pasadena, Texas police officers. Martinez was meeting his friend in a park when he was stopped by police. (Docket Entry 1-1 at ¶¶ 5, 21–30). Eight officers, some with the city police department and some with the school district, used tasers, pepper spray, and significant physical force to subdue Martinez. (*Id.* at ¶¶ 24–27, 30, 32–33). When Martinez began seizing, the police called an ambulance that took him to the hospital. Martinez died the following day. (*Id.* at ¶¶ 5, 27–29).

Martinez's surviving father and spouse sued the eight officers, alleging violations of Martinez's constitutional rights under the Fourth and Fourteenth Amendments. (*Id.* at ¶¶ 3–5, 40–42, 44, 46–47, 49, 53–54, 60–61). The plaintiffs also sued the City of Pasadena and the Pasadena Independent School District under 42 U.S.C. § 1983, asserting municipal liability claims. (*Id.* at ¶¶ 38–62). The City moved to dismiss the claims against it under Federal Rule of Civil Procedure

12(b)(6), arguing that the plaintiffs did not allege enough specific facts to show that a municipal policymaker promulgated an official policy or custom that caused the alleged rights violations. (Docket Entry Nos. 12, 15).

The plaintiffs responded that the City's motion included and referred to evidence outside the pleadings and that the court should consider the dismissal motion to be a premature motion for summary judgment.   (Docket Entry Nos. 13, 14).   Because they view the motion as one for summary judgment, the plaintiffs also moved for a continuance under Rule 56(d), to do some discovery.  (Docket Entry No. 13).  The City argued that it did not move for summary judgment and that the plaintiffs have failed to allege facts sufficient to state a municipal liability claim. (Docket Entry No. 18).

Based on a careful review of the parties' arguments, the record, and the applicable law, the court denies the motion for a Rule 56(d) continuance and grants the motion to dismiss the claims against the City, without prejudice and with leave to amend by **August 21**, **2020**.  The reasons for these rulings are set out below.

## I.    Background

The complaint provides the background information.  On April 27, 2018, 22-year-old Juan Javier Martinez, Jr., was at Strawberry Park in Pasadena, with a friend, Guido Capello, when Pasadena Police Officer Jesus Paz arrived and approached them.  (Docket Entry No. 1-1 at ¶¶ 21–22, 29).  As Officer Paz began questioning Capello, other officers arrived:  Pasadena Independent School District Police Officer Lonnie Smith II and Pasadena Police Department Officers Zachary Mabes, Joseph Lockmondy, Mark Hardin, Donna Wright, Paul Bennett, and Dover.[1]  (*Id.* at ¶¶ 8–15, 22).  Martinez was speaking to one of the officers as other "officers began to place [Capello]

---

[1] Despite their best efforts, the plaintiffs have not learned this officer's first name.  (Docket Entry No. 1-1 at ¶ 15).

in handcuffs." (*Id.* at ¶ 23).  Though Martinez "made no aggressive movement toward any officer," "the officer to whom [Martinez] was speaking grabbed [him] and forced him to the ground." (*Id.* at ¶¶ 23–24).  The officers "shout[ed] at Martinez," "[struck] him," and "place[d] their bodyweight on top of [Martinez]." (*Id.* at ¶ 24).

According to the complaint, while Martinez was on the ground, "one or more of the Defendant Officers unholstered a 'PhaZZer' Conducted Energy Weapon and fired it into [Martinez]." (*Id.* ¶ 25).  Martinez "crawl[ed] away," managed to stand, and "began [walking] away" when "another Defendant Officer . . . discharged an OC spray device into [Martinez]'s face." (*Id.* ¶ 26).  Another officer grabbed Martinez from behind and "slung him to the ground again, slamming [his] head into the ground." (*Id.*).  The officers struck Martinez repeatedly, and "[Martinez] had at least one seizure." (*Id.* ¶ 27).

The complaint alleges that, after handcuffing Martinez, the officers called an ambulance but offered no first aid, "did [not] attempt to remove the CS residue from [Martinez's] face," and denied Martinez's request for water, "openly exhibit[ing] a callous disregard for [Martinez]'s wellbeing." (*Id.* at ¶ 28).  The ambulance took Martinez to a nearby hospital, where he died "approximately twenty hours later . . . as a result of the [] injuries he sustained." (*Id.* at ¶ 29).

Martinez's wife, Debany Rivera, and his father, Juan Javier Martinez, Sr.,[2] sued the City of Pasadena, the Pasadena Independent School District, and the eight officers in a Harris County, Texas, state district court.  (Docket Entry No. 1-1).  The defendants timely removed.  (Docket Entry No. 1).  Jurisdiction is proper under 28 U.S.C. § 1331, because  the plaintiffs' claims arise under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.  (Docket Entry No. 1-1 at ¶¶ 38–62).

---

[2] Rivera and Martinez, Sr., sue "in their individual capacities as wrongful death beneficiaries," and Rivera as the decedent's sole heir at law.  (Docket Entry No. 1-1 at ¶ 5).

The plaintiffs allege that the defendants subjected Martinez to an unreasonable search and seizure, violating his Fourth and Fourteenth Amendment rights. (*Id.* at ¶ 40). They assert claims under 42 U.S.C. § 1983 for excessive force, (Docket Entry No. 1 at ¶¶ 38–42), false arrest, (*Id.* at ¶¶ 43–47), civil conspiracy, (*Id.* at ¶¶ 48–54), and deliberate indifference. (*Id.* ¶¶ 55–62). The plaintiffs allege that the City and the Pasadena Independent School District sanctioned a custom and policy of "using excessive force" during "routine arrests"; inadequately trained and supervised officers; failed to discipline or discharge officers who used excessive force in routine arrests; and failed to adopt practices to safeguard against excessive force. (*Id.* at ¶ 41).

In June 2020, the City moved to dismiss the municipal liability claims under Rule 12(b)(6), arguing that the plaintiffs have not pleaded facts that could show that: (1) a municipal policymaker; (2) promulgated an official policy; that (3) was the moving force behind the alleged violations of Martinez's constitutional rights. (Docket Entry No. 12). The plaintiffs responded, and the City replied. (Docket Entry Nos. 14, 15). The plaintiffs also moved under Rule 56(d), arguing that the motion to dismiss is properly treated as a summary judgment motion and that a continuance for discovery to frame a response is needed. (Docket Entry No. 13). The City responded. (Docket Entry No. 18).

The court considers the parties' arguments against the applicable legal standards.

## II.   **The Legal Standards**

### A.   **Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln*

*Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *see also Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) ("[W]e may take judicial notice of matters of public record."); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand.").  Though the plaintiffs "need not offer proof of [their] allegations at this stage, [they] still must plead facts that plausibly support each element of § 1983 municipal liability." *Covington v. City of Madisonville*, No. 18-20723, 2020 U.S. App. LEXIS 15741, 2020 WL 2516661, at *10 (5th Cir. May 15, 2020) (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); *Shine v. Jones*, 743 F. App'x 566, 567 (5th Cir. 2018).  When a court converts a motion for judgment on the pleadings into one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).  The court has discretion on whether to convert the motion into one for summary judgment. *See Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 (5th Cir. 1988) ("[W]hen non-pleading materials are filed with a motion to dismiss, . . . a district court has complete discretion under the Federal Rules of Civil Procedure to either accept the exhibits submitted or not, as it sees fit . . . .").

### B.        Rule 56(d)

Federal Rule of Civil Procedure 56(d) states:

**When Facts Are Unavailable to the Nonmovant.**  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

    **(1)** defer considering the motion or deny it;

(**2**) allow time to obtain affidavits or declarations or to take discovery; or

(**3**) issue any other appropriate order

FED. R. CIV. P. 56(d).

"Rule 56(d) functions as a 'safe harbor' that has been 'built into the rules so that summary judgment is not granted prematurely.'" *Bramlett v. Med. Prot. Co. of Fort Wayne, Ind.*, No. 3:10-CV-2048-D, 2012 U.S. Dist. LEXIS 127426, 2012 WL 3887059, at *3 (N.D. Tex. Sep. 7, 2012) (quoting *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987)). "[A continuance] is usually invoked when a party claims that it has had insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party." *Union City Barge Line, Inc.*, 823 F.2d at 136. "Given the precautionary nature of the rule, these requests ordinarily are treated and reviewed liberally. . . . [and] [t]echnical, rigid scrutiny of a [continuance] motion is inappropriate." *Id.*

A Rule 56(d) movant must show by "affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to dismissal. FED. R. CIV. P. 56(d). Under Rule 56(d), the movant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).

### C.    Municipal Liability

"To establish [a] municipal liability [claim] under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Whitley v. Hanna*, 726 F.3d 631, 649 (5th Cir. 2013) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)). "The[se] three attribution

principles . . . are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *see also Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992) ("[M]unicipalities may be liable for damages under § 1983, but only when an official policy or governmental custom of the municipality causes the deprivation or violation of the constitutional rights complained of by the plaintiff.").

### 1.    Official Policy or Custom

"[A] municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 811 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 852) ("To hold that this evidence is sufficient to establish an official policy of Harris County 'would be effectively to hold the [County] liable on the theory of respondeat superior, which is expressly prohibited by *Monell*.'"). "The 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Doe v. Edgewood Indep. Sch. Dist.*, No. 19-50737, 2020 U.S. App. LEXIS 20939, 2020 WL 3634519, at *16 (5th Cir. July 6, 2020) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). "The official policy itself must be unconstitutional or, if not, must have been adopted with 'deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

Policy can "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson*, 588 F.3d at 847 (quoting *Piotrowski*, 237 F.3d at 579). "There is no 'de facto' final policymaking authority." *Id.* "[A] complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Peña*, 879 F.3d at 623 (quoting *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016)).

As with the unconstitutional policy- or custom-prong of the municipal liability analysis, the plaintiff must plead facts that link the alleged civil rights violation to the policymaker's acts or omissions that are "so persistent and wide spread as to practically have the force of law." *Peña*, 879 F.3d at 621–22 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). In *Groden*, the plaintiff satisfied the policy prong "by alleging that the city 'publicly announced' the policy and that its 'spokesman' gave 'media interviews describing the new policy.'" *Peña*, 879 F.3d at 623 (quoting *Groden*, 826 F.3d at 286).

"[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Collins v. City of Harker Heights*, 916 F.2d 284, 286–87 (5th Cir. 1990) (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)); *see also Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)) ("[For] liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective."). "Because the 'standard for [municipal] fault' is a 'stringent' one, '[a] pattern of similar constitutional violations by untrained employees is ordinarily' required to show deliberate indifference." *Peña*, 879 F.3d at 623 (alterations in original) (quoting *Connick*, 563 U.S. at 62). "The [] policy prong 'includes the

decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and wide spread as to practically have the force of law.'" *Id.* at 621–22 (quoting *Connick*, 563 U.S. at 61).

A failure-to-supervise claim under § 1983 rests on a theory similar to a failure-to-train claim: a plaintiff must allege facts showing that "the [supervisor] failed to . . . supervise the officers involved"; that "there is a causal connection between the alleged failure" and the "alleged violation of the plaintiff's rights"; and that the failure "constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)).

### 2.    Municipal Policymaker

The plaintiffs must not only allege facts supporting the existence of an unconstitutional policy, practice, or custom, but they must also show that "'[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Peña*, 879 F.3d at 623 (alteration in original) (quoting *Hicks-Fields*, 860 F.3d at 808). "Th[is] culpability element, which may overlap with proof of a policy, requires evidence that 'the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" *Brown v. Bryan Cty.*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)).

"[T]he Supreme Court has evinced no preference for any single body as the source of municipal policymaking authority." *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999). In deciding which individuals are policymakers, "the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or

statutory violation at issue." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  The court looks to state law to determine who is the final policymaker for the policy, custom, or practice at issue.

The Fifth Circuit has found that the school board of an independent school district can be a final policymaking authority for the purpose of municipal liability claims.  *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) ("Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees.").  In the case of police departments, the Fifth Circuit has found that a police chief can be a final policymaker, though this is context-dependent and other officials may qualify.  *Crowder v. Sinyard*, 884 F.2d 804, 829 (5th Cir. 1989) (quoting *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340 (5th Cir. 1989)) ("[M]unicipal liability may be incurred where there has been a 'complete delegation of power' to an official charged with a constitutional violation."); *see also Zarnow*, 614 F.3d at 168 ("[W]e hold that the City impliedly delegated its policymaking authority to the chief of police."); *Gros*, 181 F.3d at 616–17 (the plaintiffs' allegations were sufficient to plead that the police chief could be a final policymaker).

An alleged "deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation[.]" *Brown*, 520 U.S. at 406.  "A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 411.

### 3.      Moving Force

The third municipal liability prong requires the plaintiff to "establish that the policy was the moving force behind the violation" and to "show direct causation." *Peterson*, 588 F.3d at 848; *see also Monell*, 436 U.S. at 694.  "[T]here must be a direct causal link between the municipal

policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. "This connection must be more than a mere 'but for' coupling between cause and effect. To form the basis of liability under § 1983, a municipal policy must be affirmatively linked to the constitutional violation and be the moving force behind it." *Fraire*, 957 F.2d at 1281 (footnotes omitted). The standard for causation is high, because "where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Piotrowski*, 237 F.3d at 580 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)).

**III.     Analysis**

**A.     Unconstitutional Policy or Custom**

The City argues that the plaintiffs' pleading allegations are insufficient to "show the City has any unconstitutional policy, that the City's policymaker was deliberately indifferent, or that any City policy was the moving force that caused a deprivation of Martinez, Jr.'s rights." (Docket Entry No. 12 at ¶ 3).

"[A] single decision by a policy maker may, under certain circumstances, constitute a policy for which the County may be liable." *Brown*, 219 F.3d at 462 (municipal liability was shown because the sheriff policymaker failed to train the reserve deputy, who had a history of excessive force and whose use of excessive force caused injuries during an arrest); *see also Peterson*, 588 F.3d at 849 (a single decision not to train an individual officer can be a basis for municipal liability, if it is obvious that this risks violating citizens' Fourth Amendment rights). The plaintiffs argue that the single incident rule applies here because the City's officers "were not properly trained and permitted excessive force," which posed an obvious risk to citizens' civil rights. (Docket Entry No. 14 at 21).

In support of a single-incident theory of liability, the plaintiffs state that the training "failures with regard to the use of force . . . provide[d] notice that any improper application of force as described, would result in violation of Fourth Amendment rights." (*Id.*).  The plaintiffs argue that, even if there is no "official" unconstitutional policy, the facts point toward a "failure to train or appropriately discipline officers" and a tacit policy, custom, or procedure "authorizing and allowing the use of excessive force" that the City should have foreseen would cause civil-rights violations.  (*Id.* at 22).

"[Fifth Circuit] caselaw suggests, . . . that the [single incident] exception is generally reserved for those cases in which the government actor was provided no training what-soever." *Peña*, 879 F.3d at 624; *see also, Worsham*, 881 F.2d at 1339–40 (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)) ("[A] single incident of unconstitutional activity will not suffice to hold a municipality liable under *Monell* 'unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'").  The plaintiffs have not alleged facts showing that the municipality "provided no training what-soever," or that there were prior incidents to show that the City was aware of a pattern of abuses from a lack of training, or that the high threshold for the single incident exception is otherwise met.  *Peña*, 879 F.3d at 624.

The plaintiffs argue, alternatively, that the involvement of eight officers satisfies the "persistent and widespread" act requirement for municipal liability.  (Docket Entry No. 14 at 22–23).  They cite no authority supporting this argument.  The plaintiffs have not pleaded facts showing either a single incident that resulted from an official policy or custom, or a pattern of similar violations required for notice.  *Peña*, 879 F.3d. at 622 n.14 ("At least twice, this court has rejected widespread-practice claims for failure to demonstrate a pattern of similar incidents. . . .

Though *Peterson* and *Pineda* were decided on summary judgment, they fairly suggest that a plausible claim requires more than a recitation of the incident in which the plaintiff was personally involved."); *Peterson*, 588 F.3d at 851 (finding that 27 similar incidents did not establish a pattern of unconstitutional conduct by city police); *Pineda v. City of Houston*, 291 F.3d 325, 329–31 (5th Cir. 2002) (same for 11 incidents).

### B.      Policymaker Culpability

The City argues that the plaintiffs have not pleaded sufficient facts to show policymaker culpability or deliberate indifference. (Docket Entry No. 12 at ¶¶ 25–26). The City contends that the statement that the "Defendant Officers' conduct . . . [was] the result of the policies and customs of the City" and the City's "failure to train its officers" is conclusory, and that the plaintiffs have failed to specify what policies or customs existed. (Docket Entry No. 1-1 at ¶ 45). The court agrees.

Though the plaintiffs allege facts suggesting that the officers disregarded the harm they allegedly inflicted on Martinez, they have not alleged facts about the City's or the policymakers' actual or constructive knowledge or deliberate indifference to such conduct. (*Id.* at ¶¶ 55–59). The plaintiffs have not pleaded specific acts by the City's municipal policymaking officials promulgating an unconstitutional policy or custom, or shown practices so "persistent and wide spread as to practically have the force of law." *Connick*, 563 U.S. at 61; *see also Peña*, 879 F.3d at 624 (rejecting the plaintiff's argument that the "single incident in which she was tased," without allegations of a pattern of prior similar constitutional violations, "plausibly suggest[ed] deliberate indifference by the city.").

### C.      The Moving Force

"The causation element demands that the plaintiff show that the objectionable municipal policy was the 'moving force' behind the plaintiff's injury." *Brown* 219 F.3d at 457 (quoting *Brown*, 520 U.S. at 408).  The City argues that the plaintiffs' complaint allegations do not include facts that can show a causal connection between the eight officers' conduct and an unconstitutional policy or custom.  (Docket Entry No. 12 at ¶¶ 27–29).  The City notes that the plaintiffs rely on district court decisions before *Twombly* and *Iqbal*.  (Docket Entry No. 15 at ¶¶ 7–10); *see, e.g.*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."); *Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 978 (E.D. Tex. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

The plaintiffs have not pleaded facts that plausibly support the first two elements of a municipal-liability claim—the existence of: an official policy promulgated by the municipal policymaker.  They have not satisfied the pleading standard for the causation element.

### D.      Rule 56(d)

The plaintiffs moved for a continuance under Rule 56(d).  (Docket Entry No. 13).  The plaintiffs object to the City's inclusion of facts outside of the pleadings in the motion to dismiss: the City's references to "the [Texas Commission on Law Enforcement] program for the State of Texas," because the program is "outside the Plaintiff's Petition,"  (*Id.* at ¶¶ 1–2); and the City's "assertions relate[d] to certain documents which are completely unavailable to [the] Plaintiff[s], such as, certain policies of Defendant City and all evidence and reporting related to the case at

15

bar." (*Id.* at ¶ 1).  The plaintiffs argue that the motion to dismiss is properly treated as a Rule 56 summary judgment motion.[3]  (*Id.* at ¶¶ 2–5; Docket Entry 14 at 7–9).  The plaintiffs assert that they require "testimony regarding the events as they occurred and exactly what [the defendant officers] observed"; the communication between the defendants during the incident; access to "documents and recordings [that] may exist"; and "access to the complete autopsy report." (Docket Entry 13 at ¶¶ 7–10; *see also* Docket Entry 14 at 7–9).  The plaintiffs' counsel submitted an affidavit setting out specific facts that the plaintiffs believe will influence the outcome of the pending dismissal motion.  (Docket Entry No. 13-1).  The affidavit asserts that the plaintiffs require the following documents: testimony related to "911 calls by any and all witnesses," "[a]ll police Reports, field notes," "all photographs, evidence and material gathered from the scene," "[a]ll training and documents reflecting the experience of the Defendants," "[d]eposition testimony," "autopsy reports," "records and documents provided to the Harris County District Attorney's office by Defendant City," "investigations relating to the use of force by Defendant City," as well as training materials, records, and policies related to de-escalation, physical force, arrest procedures, tear gas spray, and taser devices.  (*Id.* at 1–2).  The plaintiffs moved for continuance under Rule 56(d) to gather all of this evidence, which they argue is necessary to frame a response to the City's dismissal motion.  (Docket Entry 14 at 7–9).

According to the City, the plaintiffs' argument is that the court must "subject the City to burdens of discovery before [they] can state a claim for relief."  (Docket Entry No. 15 at ¶ 2).  The City contends that the plaintiffs must provide facts showing a plausible claim for relief prior to discovery and that the plaintiffs have "mischaracterized the [] motion to dismiss . . . as a summary

---

[3] At oral argument, the plaintiffs also argued that the Rule 12(b)(6) motion is untimely and is properly considered as a Rule 12(c) motion.  Because the Rule 12(c) and Rule 12(b)(6) standards are equivalent, the distinction does not alter the court's analysis.  *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2002).

judgment motion" in order to "avoid their burden under clear precedent."  (Docket Entry No. 18 at ¶ 2).  The City also points out that it "did not file any evidence in support of the [] motion to dismiss," but instead cited precedent "unequivocally demonstrate[ing] the significance of Texas police licensing and training statutes" to point out the problems with the plaintiffs' failure-to-train and failure-to-supervise claims.  (*Id.* at ¶¶ 3–4).

The court agrees that the City's motion is a motion to dismiss, not a motion for summary judgment.  The information about the Texas Commission on Law Enforcement training that the City cited is publicly available, and the court may take judicial notice of it at the motion-to-dismiss stage.  *See Ruiz*, 851 F.3d at 468 ("[W]e may take judicial notice of matters of public record."); *Funk*, 631 F.3d at 783 ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand.").  In addition, the court did not refer to, much less rely on, the Texas Commission on Law Enforcement information in deciding the motion to dismiss.  The court denies Rule 56(d) relief at this time.

## IV.    Conclusion and Order

The plaintiffs' Rule 56(d) motion for a continuance, (Docket Entry No. 13), is denied.  The City's Rule 12(b)(6) motion, (Docket Entry No. 12), is granted, without prejudice.  The plaintiffs' municipal liability claims against the City are dismissed, without prejudice, and with leave to amend, no later than **August 21**, **2020**.

SIGNED on July 28, 2020, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge