IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DEBANY RIVERA, Individually and as Heir to the Estate of Juan Javier Martinez, Jr., Deceased; and JUAN JAVIER MARTINEZ, SR.<br>    *Plaintiffs*<br><br>v.<br><br>CITY OF PASADENA; PASADENA INDEPENDENT SCHOOL DISTRICT; LONNIE SMITH, II; ZACHARY MABES; JESUS PAZ; JOSEPH LOCKMONDY; MARK HARDIN; DONNA WRIGHT; PAUL BENNETT; and [FNU] DOVER<br>    *Defendants* | Civil Action No. 4:20-cv-01881 |

# PLAINTIFFS' RESPONSE TO DEFENDANTS CITY OF PASADENA, ET AL.'S MOTION TO DISMISS

Plaintiffs file this response in opposition to the Motion to Dismiss filed by Defendants City of Pasadena, Officer Zachary Mabes, Officer Jesus Paz, Officer Joseph Lockmondy, Officer Mark Hardin, Officer Paul Bennett, Officer Timothy Dever, and Detective Donna Wright, Doc. 27.

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... 2

TABLE OF AUTHORITIES ................................................................... 3

I.  Nature and Stage of Proceedings ...................................... 4

II.  Issues Presented ................................................................. 5

III.  Factual Background ........................................................... 5

IV.  Legal Standards ............................................................... 11

V.  ARGUMENT ..................................................................... 14

  A.  RESPONSE TO SECTION III: Plaintiffs' allegations—and the recordings—establish claims against the Officer Defendants. ......... 14

  B.  RESPONSE TO SECTION IV: Plaintiffs are not required to rebut a defense of qualified immunity at this stage because they have not been ordered to file a reply to Defendants' answer. ........... 17

  C.  RESPONSE TO SECTIONS V through IX: Plaintiffs have alleged facts stating a claim against the City under the actual pleading standards. .................................................................. 19

VI.  Conclusion and Prayer ................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir. 2017) ............................... 19

*Anderson v. Valdez*, 845 F.3d 580, 589-90 (5th Cir. 2016) ............................ 12, 18, 20

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) ..................................... 12

*Carr v. Montgomery*, 59 F.Supp.3d 787 (S.D. Tex. 2014) .......................................... 21

*City of Canton v. Harris*, 489 U.S. 378 (1989) ............................................................ 22

*Cortec Industries, Inc. v. Sum Holding, L.P.* 949 F2d 42 (2nd Cir. 1991) ................. 13

*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007). ...................................................... 13

*Darden v. City of Fort Worth*, 880 F.3d 722 (5th Cir. 2018)................................ 15, 17

*Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017) ....................................... 20

*Gallentine v. Housing Authority of City of Port Arthur, Tex.*, 919 F.Supp.2d 787
(E.D. Tex. Jan. 22, 2012) ......................................................................................... 11

*Gonzalez v. King Soopers*, 2014 WL 2862262 (D. Colo, June 24, 2014).................... 13

*Griffin v. City of Sugar Land*, 2019 U.S. Dist. LEXIS 5837 (S.D. Tex. 2019).......... 15

*Hilton Hotels Corp. Texas Occupational Injury Plan v. Jurss*, 2007 WL 2987977
(S.D. Tex. Oct. 10, 2007)......................................................................................... 13

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) .......................... 13

*Inclusive Communities Project v. Lincoln Property Co.*, 920 F.3d 890 (5th Cir. 2019)
................................................................................................................................. 14

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507
U.S. 163 (1993) ................................................................................................. 12, 20

*Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488 (1986) ...................... 12

*Pena v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) ........................... 17, 19

*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) .................................... 20

*Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002).......................................... 20

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001)..................................... 20

*Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999)................................................... 13

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ................................................... 11

**Statutes**

42 U.S.C. § 1983.............................................................................................. 3, 12, 20

**Rules**

FED. R. CIV. P 7(a)(7) ................................................................................................... 18

FED. R. CIV. P. 8........................................................................................................... 12

3

## I.   NATURE AND STAGE OF PROCEEDINGS

This is a civil rights suit 42 U.S.C. § 1983 arising from the death of Juan Javier Martinez, Jr. at the hands of several officers of the Pasadena Police Department and Pasadena Independent School District. The officers struck, kicked, tased, OC sprayed, and slammed Mr. Martinez into the ground until he went into a seizure from which he never recovered, and died at the hospital less than a day later. Mr. Martinez was never placed under arrest or even suspected of any crime, and the assault on Mr. Martinez was unprovoked.

This suit was originally filed in state court against the City of Pasadena ("the City"), Pasadena Independent School District ("PISD"), and their respective officers, and then removed to this Court by the City of Pasadena. On July 28, 2020, the Court granted the City of Pasadena's first motion to dismiss under Rule 12(b)(6) with leave to amend, Doc. 22, and Plaintiffs filed their amended complaint on August 21, 2020. Doc. 25. The City, this time joined by its individual officers, filed its instant second motion to dismiss under Rule 12(b)(6).

Parties have made initial disclosures and some limited written discovery has been exchanged, but discovery has only begun and Defendants' discovery responses thus far are filled with objections and incomplete.

As explained below, Plaintiffs have properly stated claims, and the motion should be denied.

4

## II.   ISSUES PRESENTED

The City's motion and this response present the following issues:

1.     Have Plaintiffs alleged sufficient facts to make out a plausible claim under section 1983 against Defendants at this pleading stage?

2.     Does the body camera video submitted by Defendants conclusively negate Plaintiffs' claims?

## III.   FACTUAL BACKGROUND

Plaintiffs incorporate and reassert the entire fact section from their First Amended Complaint as if set forth completely herein. Doc. 25. Plaintiffs also incorporate and assert each of the video recordings filed by Defendants in their motion to dismiss.   Plaintiffs additionally state that at least one other video recording exists or existed.   Defendant Mabes wore a body camera which Defendants and their record confirm was operational during, at least, a portion of the events made basis of this litigation.   Defendants state that no recording currently exists due to the camera being knocked from Mabes' person during the events made basis of this litigation.   Mabes' video recording would contain critical audio and video of the events prior to the physical events which directly preceded injuries to Javier and which would clearly demonstrate that Defendants had no reason to detain or arrest Javier.   Defendants have provided no explanation for the portions of video and audio which would have occurred prior to the camera being knocked from Mabe's body, nor has any

5

evidence of attempts to recover the video, repairs to the camera or any other actions been provided by Defendants.

Over the course of six minutes, at the hands of at least six Defendant officers, Javier Martinez was beaten, electrocuted, gassed and thrown to the ground, which directly and proximately caused him pain, injury, seizures and, tragically, his death.   In each of the events described below, no Defendant had probable cause or reasonable suspicion to detain or arrest Javier.   No Defendant had reason to believe Javier to be a danger to himself or others. Prior to the ordeal,  Javier spoke coherently, clearly responded to questions, obeyed requests and expressed concern for his friend, Guido.   There was no legal justification for any of the acts of Defendants, and each constituted a violation of Javier's rights under the Fourth, Fifth, and Fourteenth Amendments.

On April 27, 2018, at or near 6:00 A.M., Javier Martinez was with Guido Capello in Strawberry Park, located at 1104 Parkside Drive, Pasadena, Harris County, Texas 77504.   Guido was agitated and Javier was (and had been) attempting to calm him and get him to return to his house.   Javier, a healthy, twenty-two year old male, had done nothing unlawful.

At approximately 6:49 A.M., Paz arrived and approached Mara Capello (Guido's sister), Javier and Guido.   Guido was loud and being restrained by

6

Javier.  Paz took Guido into custody.   Javier exhibited no signs of intoxication and cooperated with Paz.

Cruz and Mabes arrived in a second police car.  Cruz assisted in handcuffing Guido and placing Guido in their car.   Mabes spoke with Javier.  Although Mabes' video is missing and Cruz failed to wear a camera,  Paz's video captured Javier responding clearly and calmly to Mabes "…because I've been chasing him around".  Javier then asked Mabes "is he okay?", referring to Guido.   Javier spoke coherently and expressed concern for his friend.  Javier walked normally and displayed no signs of intoxication.  Aside from sweating, which is consistent with his trying to get Guido back to his house, Javier had no signs of anything unusual.

Mabes directed Javier to the front of his car, Javier complied and for approximately thirty three (33) seconds,  Javier stood near the front left fender.  No probable cause or reason for this detention existed and Javier complied and made no threatening movements.   Mabes, suddenly and without justification, grabbed Javier's right arm and pushed him against the car.   Cruz approached and they forcefully turned Javier to face the hood of the car causing hard contact with the vehicle.   Paz approached the group as Mabes and Cruz violently forced Javier to the ground on his right side.  Mabes and Cruz placed their weight on Javier and shouted a number of conflicting requests which also

conflicted with their actions.  A surprised Javier is heard to ask "what are you doing?" as the three Defendants pushed and pulled at him.

Defendant Smith, who had recently arrived, then violently pushed Javier's head down onto the ground and placed his right knee on Javier's neck. As he kneeled on Javier's neck, Smith threatened that he was going to "break your Goddamn hand," while placing Javier in a "come-along" wrist lock to inflict pain.  Javier, while receiving conflicting requests and under the weight of four Defendants using pain inducing actions, made no violent actions toward Defendants.  Javier suffered this treatment for one and a half minutes.

Paz then said "Fuck it, Bro.  Tase him. Tase him." and Cruz did so.  After being shocked, Javier began to crawl away, tried to stand and Smith struck Javier in the chest with his knee.  Javier held his hands out in submission. Then Javier attempted to stand.  Paz said "Do it again, bro!" and Cruz did so again, causing Javier to shout in pain and fall hard to the ground as electricity caused his muscles to violently constrict.

Javier stood and began to stagger away from Defendants.  Paz approached Javier from behind and discharged an OC spray device directly into Javier's face.

Javier staggered a short distance further as Defendants Bennett and Smith approached from behind at a full run.  Bennett and Smith then tackled Javier by grabbing his shoulders and slinging him hard into the ground

causing the back of Javier's head to forcefully strike the ground similar to tackles causing "concussion protocol" investigations in professional football.

Paz, Smith and Bennett then pushed Javier down into the ground by placing their weight on him. They struck Javier with their fists and kicked him with boots about his head and body. Smith kicked Javier with his boot, twice. Paz also kicked Javier. Bennett applied a pain technique by pushing his thumb in a location behind Javier's ear with such intensity and a duration that it caused injuries which were noted by the hospital and in the autopsy by the medical examiner. Paz also used both hands on Javier's neck to push his head to the ground. Dever pushed Javier's head to the ground again as Javier was held by other Defendants. At some point, Javier was handcuffed by Defendants.

Over the course of these six minutes, Javier's behavior and condition were drastically different. Javier, after suffering numerous strikes, kicks, being thrown to the ground on his head, Tased, and OC sprayed had been reduced to disorientation, inability to stand and inability to communicate.

Despite his condition, Paz hobbled Javier's legs and Paz, Lockmondy and Dever tried to load Javier into a police cars by lifting him by the extremities and carrying him. Javier fell backward from the car to the ground and Defendants taunted him. Javier requested water. Dever stood over Javier and said "You look like a fish right now…is that on purpose?" Lockmondy

9

stood over Javier and said "Here's your fucking water for you." as he dropped a bottle of water beside the bound Javier.   Dever then pushed Javier into a sitting position and held him in that position as Wright held water in front of him.   Detective Wright asked Javier if he wanted water and then stood up when Javier failed to respond quickly enough.   Dever allowed the semi-conscious Javier to drop back to the ground without support.   During this time, Defendants made no effort to treat Javier to reduce the effects of the OC spray. Javier began having seizures at or near this time, however, Defendants simply stood around Javier talking among themselves and joking.   Javier never regained his mobility or mentation again.   Javier experienced one seizure and was near death as the Defendants stood around him.   Several Defendants joked, Paz then warned  "I'm hot" to other Defendants to indicate that his camera was still recording.

Javier was taken to Bayshore Hospital by ambulance, where, approximately twenty hours later, Javier died as a result of the he injuries he sustained at the hands of the Defendant Officers.  No evidence of any narcotic or intoxicant was found in the medical examinations by either Bayshore Hospital.  The Medical Examiner tested Javier for more than 100 different intoxicants. No intoxicants at all were found.  No evidence of an intoxicant has been found to exist to date. Javier's cause of death was determined to be homicide.

10

Bennett struck Javier at least twice with his fists, once with his knee and applied "mandibular angle pressure point" behind Javier's ear.  Dever struck Javier with his hands, pushed him into the ground, kicked Javier with his feet and intentionally dropped an incapacited, handcuffed Javier to the ground after lifting him up.  Cruz fired his CEW device into Javier, kicked Javier at least once and struck Javier with his fist at least once. Paz sprayed OC spray into Javier's face, placed pressure behind Javier's right ear, struck Javier with his hands, struck Javier with  his knees, and kicked Javier with his foot.  Mabes struck Javier with his fists and kicked Javier with his feet. Smith grabbed Javier from behind and threw him to the ground, striking his head and struck Javier with his fists and placed his knee on Javier's neck.

## IV.  LEGAL STANDARDS

Under Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs must simply provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8.  "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). "Rule 12(b) is not a procedure for resolving contests about the facts or the merits of a case." *Gallentine v. Housing Authority of City of Port Arthur, Tex.*, 919 F.Supp.2d 787, 794 (E.D. Tex. Jan. 22, 2012).

The Supreme Court has squarely held that a federal court may not "apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) . . .—in civil rights cases alleging municipal liability under" section 1983." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993). Moreover, in the Fifth Circuit, when "a qualified immunity defense is asserted in an answer or motion to dismiss, 'the district court must'—as always—do no more than determine whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Anderson v. Valdez*, 845 F.3d 580, 589-90 (5th Cir. 2016). The "heightened pleading standard derived from Rule 9 does not apply to the complaint or to any reply merely because an answer or motion to dismiss asserts a defense of qualified immunity." *Id.* at 190.

When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. *Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 493 (1986). A complaint will survive a motion to dismiss under Rule 12(b)(6) if it states plausible grounds for Plaintiffs' entitlement to relief sought. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555-6 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, 'in order

to give the defendant fair notice of what the... claim is and the grounds upon which it rests." *Id.* at 545. "To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's complaint survives a Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Further, The Court should accept all facts alleged in a complaint, and view the facts in the light most favorable to the plaintiff. *Id.*

Further, the Court must limit its consideration of the factual sufficiency of the pleadings to the pleadings themselves and any documents specifically referenced therein. *Gonzalez v. King Soopers*, 2014 WL 2862262 (D. Colo, June 24, 2014). The court does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The Court may simply deny a Rule 12(b)(6) motion to dismiss which relies on facts asserted outside the pleadings. *Hilton Hotels Corp. Texas Occupational Injury Plan v. Jurss*, 2007 WL 2987977 (S.D. Tex. Oct. 10, 2007). Further, the Complaint is deemed to include any exhibit or statements or documents incorporated in it by

13

reference. *Cortec Industries, Inc. v. Sum Holding, L.P.* 949 F2d 42, 47 (2nd Cir. 1991).

## V.   ARGUMENT

Defendants have taken a "shotgun" approach in their motion, asserting numerous arguments in multiple sections, to which Plaintiffs will respond in turn. Sections I and II of Defendants' motion contain no substantive argument—Section I only recites their contention as to the standard for dismissal, and Section II contains only a recitation of Plaintiffs' allegations. Accordingly, Plaintiffs will begin by responding to Section III.

### A. *RESPONSE TO SECTION III: Plaintiffs' allegations—and the recordings—establish claims against the Officer Defendants.*

Defendants assert that "Plaintiffs' allegations fail to show that any officer violated Martinez, Jr.'s rights." However, Defendants do actually argue that Plaintiffs did not allege sufficient facts showing a section 1983 claim against the individual defendants or that they violated Martinez's rights— Plaintiffs plainly have—but instead argue, with little real explanation, that the body camera recordings they submitted to the Court contradict these allegations.

As noted in one of the cases cited by Defendants, in attaching documents to the motion to dismiss, "'the defendant merely assists the plaintiff in establishing the basis of the suit, at the court in making the elementary

14

determination of whether a claim has been stated.'" *Inclusive Communities Project v. Lincoln Property Co.*, 920 F.3d 890, 900 (5th Cir. 2019). While a "'court may consider video evidence attached as an exhibit to the complaint,'" the "standard for adopting video evidence over a plaintiff's allegations is, nevertheless, 'a demanding one: a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account.'" *Griffin v. City of Sugar Land*, 2019 U.S. Dist. LEXIS 5837 *3 (S.D. Tex. 2019) (quoting *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018)).

In *Griffin*, another excessive force case, the video attached to the complaint contradicted the plaintiff's allegations because it showed that the plaintiff was in violation of a city ordinance when the police encountered him, it "clearly show[ed]" that the plaintiff was a threat to the officers, that the plaintiff fled when one of the officers attempted to arrest him, and that the officers ultimately arrested the plaintiff—who lived—after a "brief scuffle that lasted less than a minute." *Id.*, at *22–24.

The video in this case shows none of these things. The video reveals no violation of the law by Martinez. Contrary to Defendants' claims, the video does not show any signs of intoxication on the part of Martinez. The video shows that Martinez did not make any aggressive moves or present any threat to the

safety of the officers or the public—on the contrary, it shows that Martinez was lucid and alert, and that he was cooperative and attempting to calm his friend.

The video discloses no reason at all for the officers to attempt to detain or arrest Martinez in the first place. Additionally, the video does not show Martinez fleeing the officers—it simply shows him walking away from the officers after being manhandled and struck by the officers for several minutes and being shocked three times with a Taser, and while being sprayed in the face with OC spray by one of the officers.

Defendants claim that the recordings show that "the officers were authorized to lawfully detain Martinez, Jr. to determine whether he needed medical care, to determine whether he was intoxicated, and to maintain the status quo…" As the Court can see, the video shows no such thing. The video shows no sign that Martinez was intoxicated, nor does it show any reason to believe that Martinez had any need for medical care (except for the injuries he suffered at the hands of Defendants). The recordings do not show any basis for Defendants to believe they were authorized to detain Martinez, let alone conclusively show such an authorization.

The available recordings do not provide a close view or clear audio of what, if anything, prompted Officers Mabes and Cruz to suddenly grab Martinez and throw him to the ground. Body camera recordings from Officers Mabes and Cruz themselves would provide the best evidence, but, troublingly,

16

the City has produced no such footage. Officer Mabes is clearly wearing a body camera in the available video, but claims in the internal affairs investigation that the camera was "knocked off" in the struggle.[1] No mention is made of what happened to the footage from before the camera was "knocked off," nor is any mention made of what happened to the footage from Cruz's body camera, if he was even wearing one.

Thus, the City asks the Court to dismiss this case based upon the footage it has chosen to preserve and produce. However, even that footage demonstrates that there is at least a fact question that should be developed through discovery, including inquiry into what happened to the missing footage. The recordings are consistent with Plaintiffs' claims, and certainly do not contradict them with "so much clarity that a reasonable jury could not believe [Plaintiffs'] account.'" *Darden*, 880 F.3d at 730. The recordings are no basis for dismissal here.

### B. RESPONSE TO SECTION IV: Plaintiffs are not required to rebut a defense of qualified immunity at this stage because they have not been ordered to file a reply to Defendants' answer.

Defendants next argue that "Plaintiffs' allegations fail to overcome any officer's qualified immunity." However, the Fifth Circuit has "outlined the proper procedural framework for addressing § 1983 claims at the pleading

---

[1] Ex. 1.

stage." *Pena v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018). When "a qualified immunity defense is asserted in an answer or motion to dismiss, 'the district court must'—as always—do no more than determine whether the plaintiff has 'file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Anderson v. Valdez*, 845 F.3d at 589-90. Only after "applying this general pleading standard to the complaint, 'the court *may* [*then*], *in its discretion*, insist that a plaintiff file a reply tailored to [the defendant's] answer [or motion to dismiss] pleading the defense of qualified immunity.'" *Id.* at 590 (emphasis in original); *see also* FED. R. CIV. P 7(a)(7) (allowing a reply to an answer only "if the court orders one"). The "heightened pleading standard derived from Rule 9 does not apply to the complaint or to any reply merely because an answer or motion to dismiss asserts a defense of qualified immunity." *Id.*

Because Plaintiffs have not been ordered to file a reply, they are not required to have pled facts overcoming qualified immunity at this stage. Under the Fifth Circuit standard, the Court is confined at this stage only to determining whether Plaintiffs have "'file[d] a short and plain statement of [their] complaint, a statement that rests on more than conclusions alone.'" *Id.* at 589-90. As explained above, Plaintiffs have done so.

Moreover, even if Plaintiffs were required, at this stage, to respond to Defendants' qualified immunity defense, Plaintiffs pleadings allege clearly

established violations of the law. First, Plaintiffs have explicitly alleged that the officers lacked any reasonable suspicion or probable cause to initiate any use of force against Martinez. A seizure unsupported by reasonable suspicion is a clearly established violation of the Fourth Amendment, and the specific facts alleged by Plaintiffs—that Martinez was suspected of no crime, showed no signs of intoxication, and was cooperative with and presented no threat to the officers—clearly establish a lack of reasonable suspicion. *Alexander v. City of Round Rock*, 854 F.3d 298, 305 (5th Cir. 2017). Additionally, the use of a taser, OC spray, strikes, and other physical force against a non-suspect is also a clearly established violation of the Fourth Amendment, and allegations of such uses of force state a claim for excessive force. *Pena*, 879 F.3d at 620.

Additionally, because the video currently before the Court plainly demonstrates at least a genuine dispute between the parties regarding qualified immunity, and because of the inadequately-explained absence of recordings from Officers Mabes and Cruz, it is unnecessary for the Court to exercise its discretion to order a reply. Instead, the Court should permit Plaintiffs to obtain full discovery on the qualified immunity issue so that the facts can be developed and the matter resolved through summary judgment or trial.

### C. RESPONSE TO SECTIONS V through IX: Plaintiffs have alleged facts stating a claim against the City under the actual pleading standards.

At this stage, Plaintiffs are required only to provide "a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Anderson v. Valdez*, 845 F.3d at 589-90. A court may not "apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Rule 8(a) . . .—in civil rights cases alleging municipal liability under" section 1983." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. at 164. Plaintiffs have satisfied this standard.

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

> Official policy establishes culpability, and can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy."

*Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)

Defendants complain that Plaintiffs have made only "conclusory legal assertions," which is not true, and that Plaintiffs have alleged too-few incidents in too-little detail to show a pattern of constitutional violations. Defendants cite a series of summary judgment cases in support: *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009) (summary judgment); *Pineda v. City of Houston*, 291 F.3d 325, 329 n. 12 (5th Cir. 2002) (summary judgment);

*Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (summary judgment). However, fewer specific instances are necessary at the pleading stage. *Carr v. Montgomery*, 59 F.Supp.3d 787, 802 (S.D. Tex. 2014) (four specific incidents were "sufficient to state a claim for municipal liability at the pleading stage").

Plaintiffs have alleged multiple specific unconstitutional policies, and explained that these policies are evidenced by the fact that "the Defendant Officers openly engaged in these practices with the full knowledge of the PPD's and PISD's policymakers—at times even in the presence of senior officers— and not one of the Defendant Officers was punished, reprimanded, or even informally corrected. Additionally, the lack of action by PPD's and PISD's policymakers constitute a ratification of these unconstitutional policies." First Amended Complaint, ¶52. The recordings before the Court, including the behavior and banter of the officers after the incident, further demonstrate these policies. These policies were plainly a "moving force," because they were carried out by the officers. Plaintiffs have stated a claim for municipal liability.

Defendants further rely on their contention that the City had adopted TCOLE standards. They cite no case where a City's claimed adoption of a state training standard warranted dismissal at the pleading stage. Plaintiffs are not required to tailor their pleadings in anticipation of a defensive matter unless the Court orders a reply.

Plaintiffs have made multiple allegations regarding specific deficiencies in the City's training, regardless of whether the City claims to have adopted TCOLE standards. Moreover, Plaintiffs have also alleged that the City was aware that their training failures were likely to result in the violations of citizens' constitutional rights. As the Supreme Court has recognized:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.

*City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

The same plainly must be said for the use of "less lethal" force. The lack of training in the limits of such force is plainly on display in the recordings before the Court. Between Plaintiffs pleadings and the recordings, Plaintiffs have stated a claim for a deficient training policy.

## VI.   CONCLUSION AND PRAYER

Plaintiffs have alleged facts making out a plausible cause of action against the City of Pasadena and its employees, and these facts are corroborated by the recordings filed by Defendants. It is not required to prove its case at this early stage, nor should it be required at this stage, without discovery, to rebut the City's evidence-free assertions that its training meets applicable state standards. Moreover, Plaintiffs are not required to rebut

Defendants' assertions of qualified immunity at this stage. Plaintiffs request that the City's motion to dismiss be denied. Additionally, because this is the individual defendants' first motion to dismiss, Plaintiffs request the right to amend their pleadings should the Court be inclined to grant their motion.

Respectfully Submitted,

**GABEL LAW PLLC**

*/s/ Christopher Gabel*

**Christopher Gabel**
State Bar No. 24089408
Federal ID No. 2373978
700 Louisiana, Suite 3950
Houston, Texas 77002
chris@gabellawyer.com
Telephone: 713-429-4477
Facsimile: 713-429-5546
***Attorney for Plaintiffs***

OF COUNSEL:

**HUMPHREY LAW PLLC**

**Brian Humphrey**
State Bar No. 24074456
Federal ID No. 2202829
TC Energy Center
700 Louisiana, Suite 3950
Houston, Texas 77002
brian@htx-law.com.com
Telephone: 713-364-2616
Facsimile: 832-827-3299

**ROBERT G. TAYLOR, II, P.C.**

**Robert G. Taylor, III (Trey)**
State Bar No. 19721100

Federal ID No. 18950
2040 North Loop West, Suite 104
Houston, Texas 77018
[ttaylor@rgtaylorlaw.com](mailto:ttaylor@rgtaylorlaw.com)
Telephone: 713-654-7799
Facsimile: 713-654-7814

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all attorneys of record and/or unrepresented parties in accordance with Rule 5 and Local Rule 5.5 as indicated below on October 9, 2020.

| | |
|---|---|
| **William S. Helfand** | **Larry Simmons** |
| **Norman Ray Giles** | **Carmen Jo Rejda-Ponce** |
| LEWIS BRISBOIS BISGAARD & SMITH, LLP | GERMER PLLC |
| 24 Greenway Plaza, Suite 1400 | America Tower |
| Houston, Texas 77046 | 2929 Allen Parkway, Suite 2900 |
| *Via ECF* | Houston, Texas 77019 |
| | *Via ECF* |

*/s/ Brian Humphrey*
Brian Humphrey